JOSEPH WILD v. THOMAS DAVENPORT AND HENRY P. DOREMUS.

1. Participation in profits or the right to participate in the profits of a business is not an invariable test of a partnership, even as to creditors. A person not actually engaged in the business as a principal, and not holding himself out as a partner, cannot be held for debts incurred in the business as a dormant partner unless in virtue of some contract, express or implied, on his part, in legal effect creating, as between him and the persons actually carrying on the business, the relation of principal and agent.

2. An executor who engages in business, either as a sole trader or in a. partnership, with the testator's assets, though he does it as executor and not for his individual benefit, will be personally liable fer debts contracted in the business, and this although he does so in compliance with directions in the testator's will or in conformity with articles of partnership to which the testator was a party, which provide that on the death of a partner his executor or personal representatives shall be admitted into the firm.

3. Where articles of partnership provide that on the death of a partner during the partnership term his executor shall be entitled to the place of the deceased partner in the firm, with the capital of the deceased partner in the firm business, the executor has an option to come in or

not, and a reasonable time within which to elect. If he elects to come in, he comes in with all the rights and liabilities of a partner, and is personally liable, as a partner, for debts contracted in the business.

4. But articles of partnership which simply provide that on the death of one partner his capital shall be left in the business until the end of the partnership term, do not require the admission of the executor of a deceased partner in the management or control of the business, and if he does not personally engage in the business he will not be personally liable for debts, though he leaves the testator's capital in the business. In such cases creditors becoming such after the death of one of the partners have only the liability of the surviving partner by whom the business is carried on, and the security of the capital of the deceased partner which is left in the business.

On writ of error to Somerset Circuit.

James S. Davenport, Edward L. Voorhees, William S. Johnson and James B. Davenport entered into partnership under the firm name of Davenport, Johnson & Co., by articles of copartnership dated November 1st, 1880. The articles provided that the copartnership should commence November 1st, 1880, and continue for the term of three years. The copartnership articles contained a provision that in case any of the said parties should die before the expiration of the copartnership, the sum standing to his credit at that time in the assets of the firm should remain as a part of the capital of the firm until the expiration of the copartnership, and at the expiration of the copartnership all moneys contributed to the capital of the firm by any of the members of the firm should first be repaid to such contributor out of the assets of the firm before any division of the profits should be made.

Johnson died in July, 1881, leaving a will appointing the defendants in error executors. He had contributed $15,000 of capital, and at his death $17,000 were standing to his credit. This sum continued in the business until the expiration of the partnership on October 31st, 1883. The business was carried on by the surviving partners. The executors examined the books and accounts of the firm from time to time, but did not otherwise interfere with or participate in the business. It did

not appear that any profits were ever received by them from the business, or that the capital standing in the deceased partner's name was ever withdrawn by them.

In October, 1883, plaintiff sold the firm of Davenport, Johnson & Co., a bill of merchandise, and this suit was brought against the surviving partners and the executors of the deceased partner, to charge them personally jointly as partners.

The judge at the Circuit decided that the executors of the deceased partner could not be held personally liable as partners.

For the plaintiff in error, *H. F. Galpin.*

*Contra, Wallis & Edwards.*

The opinion of the court was delivered by

DEPUE, J.   The bill of exceptions in this case presents the single question whether, upon the facts stated, the defendants in error, executors of the deceased partner, became personally liable as partners for debts contracted by the firm after the death of the testator.

Partnership is a relation arising from contract. It is usually defined to be a voluntary contract between competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, upon the understanding that there shall be a communion of the profits thereof between them. *Story on Part.,* § 2 ; 3 *Kent* 23.   Mr. Justice Lindley quotes from "Words of Celebrity" a number of definitions of partnership, in all of which the elements of contract or agreement is fundamental. 1 *Lind. on Part.* 2. *Inter sese* the fact of partnership, as well as the rights, duties and obligations of partners, arises wholly from the terms of the contract, and as to third persons and creditors the same rule prevails, except where the persons concerned have held themselves out as partners—have acted ostensibly as interested in the business as if they were partners in it, and have so con-

ducted themselves as to lead people to suppose that they were willing to be regarded by them as if they were partners in fact. 1 *Lind. on Part.* 47; *Central Savings Bank* v. *Walker,* 66 *N. Y.* 424; *Mershon* v. *Hobensack,* 2 *Zab.* 372; 3 *Id.* 580.

Nor is it every contract for a share of the profits of a business that will create a partnership either *inter sese* or as to creditors. Thus, a contract for the employment of agents or servants for a proportion of the profits of the business as salaries or wages for services does not make such persons partners or liable as partners for debts contracted in the business. *Voorhees* v. *Jones,* 5 *Dutcher* 270; *Nutting* v. *Colt,* 3 *Halst. Ch.* 539; *Hargrave* v. *Conroy,* 4 *C. E. Green* 281; *Berthold* v. *Goldsmith,* 24 *How.* 536. To subject a person not ostensibly a partner to liability for partnership debts, there must be some contract to which he is a party with respect to a communion of profits, which gives him control as principal over the conduct of the business, or creates, as between him and the ostensible partner, the relation of principal and agent. Every partner, indeed, virtually embraces the character both of a principal and of an agent. So far as he acts for himself and his own interest in the common concerns of the partnership, he may properly be deemed a principal; and so far as he acts for his partners he may properly be considered an agent. *Story on Part.,* § 1. In Voorhees *v.* Jones, the decision that a servant or agent who had a share of profits simply as compensation for services was neither a partner nor liable for partnership debts, was placed by Chief Justice Whelpley on the ground that such a person had no control over the operations of the firm, and could not direct its investments nor prevent the contracting of debts—in other words, had none of the prerogatives of a principal in the management and control of the business. 5 *Dutcher* 272.

The leading case in England on this subject at the present time is *Cox* v. *Hickman,* decided in the House of Lords, and reported in 8 *H. of L. Cas.* 268, and in 9 *C. B.* (*N. S.*) 47. In that case two persons engaged in business as partners, having become financially embarrassed by a deed between

them of the first part, certain persons as trustees, of the second part, and such of the firm creditors as should execute the deed, of the third part, assigned their partnership estate and effects to the trustees, in trust, to carry on the business under the name of the Stanton Iron Company, and, out of the profits, to pay the mortgages, &c., and then to divide the net profits among the creditors executing the deed, in proportion to the amount of their several debts, paying over the residue to the grantors. In an action against creditors who had executed the deed, for debts contracted by the trustees in the business, brought against them as partners, the House of Lords held that the action could not be maintained, and adopted as the test of liability as a partner, not whether the party sought to be charged had stipulated for a participation in profits as such, but whether the persons by whom the trade was actually carried on carried it on in the capacity of agents for him. Lord Cranworth, in his opinion, speaking of the provision of the deed for dividing the net profits of the business in payment of the creditor's debts, said : " Up to this point the creditors are merely passive, and the first question is, What would have been the consequence to them of their executing the deed if the trusts had ended there? Would they have been partners in the concern carried on by the trustees merely because they passively assented to its being carried on upon the terms that the net income—i. e., the net profits—should be applied in discharge of their demands? I think not. It was argued that as they would be interested in the profits, therefore they would be partners. But this is a fallacy. It is often said that the test, or one of the tests, whether a person not ostensibly a partner is nevertheless, in contemplation of law, a partner, is whether he is entitled to participate in the profits. * * * The real ground of liability is that the trade has been carried on by persons acting on his behalf. When that is the case he is liable to the trade obligations, and entitled to its profits, or to a share of them. It is not strictly correct to say that his right to share in the profits makes him liable to the debts of the trade. The

correct mode of stating the proposition is to say that the same thing that entitles him to the one makes him liable to the other, namely, the fact that the trade has been carried on on his behalf; *i. e.*, that he stood in the relation of principal towards the persons acting ostensibly as the traders, by whom the liabilities have been incurred, and under whose management the profits have been made. Taking this to be the ground of liability as a partner, it seems to me to follow that the mere concurrence of creditors in an arrangement under which they permit their debtor, or trustees for their debtor, to continue his trade, applying the profits in discharge of their demands, does not make them partners with their debtor or the trustees.    *    *    *    I can find no case in which a person has been made liable as a dormant or sleeping partner, in which the trade might not fairly be said to have been carried on for him, together with those ostensibly conducting it, and when, therefore, he would stand in the position of principal towards the ostensible members of the firm as his agents."

In Cox *v.* Hickman the deed also contained provisions granting power to the creditors executing it to determine that the trade should be discontinued, or, if not discontinued, to make rules and orders as to its conduct and management—control, to some extent, over the conduct of the business from which the profits were to be derived. The House of Lords held that these provisions did not alter the legal situation of the creditors ; that the trade still remained the trade of their debtors—the creditors having no interest in it, except for the payment of their debts, and that these provisions did not constitute the relation of principal and agent between the creditors and the trustees. That subject need not be discussed at this time. It may, however, be remarked that the Supreme Court, and this court, in *Brundred* v. *Muzzy*, 1 *Dutcher* 268 ; *S. C., on error, Id.* 674, held that creditors becoming parties to an agreement for the appropriation of the proceeds of the business in payment of their debts, similar to that on which Cox *v.* Hickman was decided, with power to appoint an agent

to manage the business, were not liable, as partners, with the debtors by whom the business was carried on, with respect to debts contracted in the business.

My citation of authorities has been made with a view of showing that a right to receive a share of the profits of a business does not furnish an invariable test of a partnership, even as to creditors; that a person not actually engaged in the business as a principal, and not holding himself out as a partner, cannot be held for debts contracted in the business as a dormant partner, unless in virtue of some contract, express or implied, on his part in legal effect creating, as between him and the persons actually carrying on the business, the relation of principal and agent. Cox v. Hickman is the most authoritative exposition of this doctrine in the English courts. *Waugh* v. *Carver,* 2 *H. Bl.* 235, the leading case usually cited for the doctrine that " he who takes the general profits of a partnership must of necessity be liable to the losses," is a case founded on a contract of this character.

The English decisions subsequent to Cox v. Hickman are cited in the notes to Waugh v. Carver, in the eighth edition of Smith's Leading Cases. 1 *Sm. Lead. Cas.* 1328. Mr. Wood has collected the American cases in a note to section 52 of his edition of Collyer on Partnership. The American courts have not uniformly followed Cox v. Hickman to the full extent; but my examination of the English and American decisions has led me to the conclusion that in almost all the cases in which persons not acting as principals in the business have been held liable for debts as dormant partners, " the trade," to quote the language of Lord Cranworth, " might fairly be said to have been carried on for them, * * * and when, therefore, they would stand in the position of principals towards the ostensible members of the firm as their agents." Cases such as *Sheridan* v. *Medara,* 2 *Stockt.* 469, in which it has been held that a loan, upon terms that the lender shall receive a greater rate of interest for the use of the money lent in case the business in which it is invested proves successful, created such a right to participate in profits as made the

lender liable for debts as a partner, are referable to this principle. *Pooley* v. *Driver*, 5 *Ch. Div.* 458 ; *Ex parte Delhasse*, 7 *Id.* 511. Participation in profits or the right to participate in profits, is cogent evidence, and, standing alone, may be conclusive evidence of a partnership, but, in the case of a party who has not acted as a principal in the business, and therefore is not ostensibly a partner, may be explained and overcome by other circumstances. *Pooley* v. *Driver, supra ; Kilshaw* v. *Jukes,* 3 *B. & S.* 840 ; *Ex parte Tennant,* 6 *Ch. Div.* 303 ; *Story on Part.,* § 38.

The decisions germane to the particular case now before the court have gone upon the same principle. As a general rule, the death of one partner works a dissolution of the partnership. If an executor engages in business, either as a sole trader or in a partnership, with the testator's assets, though he does it as executor, and not for his individual benefit, he will be personally liable for the debts incurred in the business, and this although he does so in compliance with directions in the testator's will, or in conformity with articles of partnership to which the testator was a party which provide, as articles of partnership sometimes provide, that on the death of a partner his executor or personal representatives shall be admitted into the firm. *Wightman* v. *Townroe,* 1 *M. & S.* 412 ; *Labouchere* v. *Tupper,* 11 *Moore P. C.* 198, 221 ; *Laible* v. *Ferry,* 5 *Stew. Eq.* 791 ; 2 *Lind. on Part.* 1060, 1061 ; *Story on Part.,* § 70.

A provision in articles of partnership that on the death of a partner his executor or personal representative, or some other person, shall be entitled to the place of a deceased partner in the firm, with the capital of the deceased in the firm business, or some part of it, is binding upon the surviving partner to admit the executor, personal representative or nominee of the deceased partner, but does not bind the latter to come in. They have an option to come in or not, and a reasonable time within which to elect. *Pigott* v. *Bagley,* 1 *McC. & Y.* 569; *Madgwick* v. *Wimble,* 6 *Beav.* 495; *Downs* v. *Collins,* 6 *Hare* 418 ; 2 *Lind. on Part.* 852. An executor

or nominee of a deceased partner coming in under such a provision in partnership articles comes in as a partner, with all the rights and liabilities of a partner, and consequently becomes personally liable for debts contracted in the business. He is made personally liable for debts for the reason that he has of his own volition engaged in the business as a principal, and is a contracting party. As was said by Lord Eldon, in *Ex parte Garland*, 10 *Ves.* 119, " he places himself in that situation by his own choice, judging for himself whether it is fit and safe to enter into that situation and contract that sort of liability ; " and if he has acted in compliance with the testator's directions, he will be entitled to indemnity out of the testator's estate to the extent of the fund which the testator has embarked in the business, and no further. *Ex parte Garland*, 10 *Ves.* 109 ; *In re Johnson*, 15 *Ch. Div.* 548 ; *Laible* v. *Ferry*, 5 *Stew. Eq.* 791 ; *Burwell* v. *Mandeville's Ex'rs*, 2 *How.* (*U. S.*) 560.

On the other hand, a stipulation in partnership articles, that upon the death of a partner his capital shall remain in the business until the expiration of the prescribed term of the partnership, is binding as well upon the estate of the deceased as upon the surviving partner. *Scholefield* v. *Eichelberger*, 7 *Pet.* 586 ; *Burwell* v. *Mandeville's Ex'rs*, 2 *How.* (*U. S.*) 560 ; *Downs* v. *Collins*, 6 *Hare* 418, 437 ; *Story on Part.*, § 261 *a*. Where the provision in the partnership article is simply that the deceased partner's capital shall remain in the business, the executor is not admitted into the management of the business. The control of the business is with the surviving partner. The executor cannot withdraw the capital of the deceased partner without subjecting the estate to liability to suit, nor can he exercise the control of a partner in the conduct of the business. In this situation none of the reasons for the liability of a partner exist as against him. Hence it is that when by the articles of partnership a new member is brought into the firm on the death of a partner, as an executor or trustee, firm creditors becoming such after the partner's death have the personal liability of the admitted member of

the firm; but where by the articles the capital only of the deceased partner is continued in the firm without any person being added, such creditors have only the liability of the surviving partner, by whom the business is carried on, and the security of that part of the estate of the deceased partner which is left in the business. *Parsons on Part.* 454.

*Holme* v. *Hammond, L. R.,* 7 *Exch.* 218, is a case exactly in point. In that case three persons agreed, by articles of partnership, to conduct business for a term of seven years, with a provision that if either died during the partnership term, the surviving members were to continue the business upon the terms expressed in the articles of partnership, and, for the residue of the term, to pay the representatives of such deceased partner the share of the profits he would have been entitled to if living. One of the partners died during the partnership term, and the surviving members continued the business. The executors of the deceased partner never interfered in the business, but they claimed the share of profits the deceased would have been entitled to. No settlement of accounts respecting the interest of the deceased partner in the partnership business had been made, but a sum had been paid his executors generally, part of which would be applicable to profits realized after his death. In an action for a debt contracted after his death, against the executors of the deceased partner and the surviving partner, the Court of Exchequer held that the executors could not be held as partners. Kelly, Chief Baron, speaking of judicial *dicta* to the effect that the mere participation in profits made the participator a partner, said that looking to the decisions themselves in which the question had arisen, it would be seen that in no case had the party sought to be charged been held liable, except where a contract of copartnership had been entered into; that whenever the plaintiff had failed to establish a contract of copartnership the action had failed; that upon the death of one partner the partnership was dissolved by operation of law, and the surviving partners from that time carried on the business; but that this was, in contemplation of law, a new part-

nership, and the executors of the deceased partner could not become partners with the survivors without some agreement, express or implied, to which they were parties. Martin, Baron, said that the defendants did nothing more than claim and receive profits under the articles of partnership, and that in his opinion that act did not make them liable to the plaintiff's demand; that they did nothing in their own behalf at all; they merely did that which a court of equity would have compelled them to do as executors under the will, and that it would be contrary to reason to hold them liable by that act to a responsibility which must of necessity be borne by them in their own personal capacity, and paid out of their private funds. Bramwell, Baron, assigned, as the ground of his judgment, that the representatives of the deceased partner were not to be partners with the survivors; that they could not interfere with the business or its management in any way —could not say that any particular business should be done by the firm, or that it should not be done, or how it should be done; that they could neither make, nor order a contract, nor forbid, nor perform, nor enforce, nor release one.

In Holme v. Hammond there was not, in fact, any capital belonging to the firm at the death of the deceased partner, except office furniture of the value of £100, and the articles of partnership did not provide for the continuance of a deceased partner's capital in the firm, though it contained a provision that each partner should contribute capital and share profits and losses equally. Kelly, Chief Baron, and Martin and Cleasby, Barons, intimated an opinion that the result would have been different if the executors had voluntarily left capital belonging to the deceased in the firm. That question does not arise in this case. Here the articles of partnership provided for the retention of the testator's capital in the firm until the expiration of the term of the partnership, and the executors did nothing of their own volition, but simply conformed to the obligation entered into by the testator.

The cases in which the precise question has been raised which this bill of exceptions raises are few. The cases cited

by the plaintiff in error from the English and American courts are those in which the personal liability of an executor voluntarily engaging in business with his testator's assets has been adjudged, or the extent of the right of partnership creditors to charge the estate of a deceased partner for debts contracted after his death has been involved. *Wightman* v. *Townroe; Labouchere* v. *Tupper; Ex parte Garland; Edgar* v. *Cooke,* 4 *Ala.* (*N. S.*) 588; *Thompson* v. *Brown,* 4 *Johns. Ch.* 619; *Stanwood* v. *Owen,* 14 *Gray* 195, are cases of this class. The only cases in American courts presenting directly the question raised in this case that have come under my observation are *Owens* v. *Mackall,* 33 *Md.* 382, and *Richter* v. *Poppenhuysen,* 39 *How. Pr.* 83, and both of these decisions are with the defendants in error.

Nor did the defendants become partners in the business by reason of their examination into the affairs of the firm. This was a duty they performed in the execution of the trust arising out of their executorship. Nor are the rights of the creditors of the deceased partner to have the estate of the testator settled up, and their debts paid at all involved in this controversy. When the contingency arises upon which the payment of the testator's debts is involved, a court of equity will be competent to afford them adequate relief against tying up the estate of the testator to the prejudice of his creditors.

Upon the case presented we think that the decision of the learned judge that the defendants in error were not liable was correct, and the judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, DEPUE, DIXON, KNAPP, REED, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, COLE, MCGREGOR, PATERSON, WHITAKER.    13.

*For reversal*—None.