This is an appeal from a judgment of the Supreme Court reversing a determination of the Unemployment Compensation Commission. The question involved is whether one Arline Chesire was, from January 1st, 1939, to January 1st, 1942, a partner or an employee of the prosecutor-respondent, John R. Fenwick, trading as United Beauty Shoppe. If she was an employee, then she was the eighth and deciding employee for the purpose of determining the status of the respondent for the year 1939 as an employer subject to the terms of the statute. It is not the contention of the appellant commission that there was a fraudulent intent to avoid the act but the case is submitted as one of legal construction of the relation between Mrs. Chesire and the respondent.
Respondent, Fenwick, commenced operation of the beauty shop in Newark in November, 1936. In either 1937 or early 1938 he employed Mrs. Chesire as a cashier and reception *Page 296 
clerk. Apparently her duties were to receive customers, take their orders for services to be performed by the operators, and collect the charges therefor. The shop did not work on an appointment basis but on a "first come-first served" plan. Mrs. Chesire was employed at a salary of $15 per week and continued at that salary until December, 1938, when she requested an increase. Respondent expressed a willingness to pay higher wages if the income of the shop warranted it. Thereupon an agreement was entered into by the parties. This agreement was drawn by a lawyer who had offices nearby and provided:
1. That the parties associate themselves into a partnership to commence January 1st, 1939.
2. That the business shall be the operation of the beauty shop.
3. That the name shall be United Beauty Shoppe.
4. That no capital investment shall be made by Mrs. Chesire.
5. That the control and management of the business shall be vested in Fenwick.
6. That Mrs. Chesire is to act as cashier and reception clerk at a salary of $15 per week and a bonus at the end of the year of 20% of the net profits, if the business warrants it.
7. That as between the partners Fenwick alone is to be liable for debts of the partnership.
8. That both parties shall devote all their time to the shop.
9. That the books are to be open for inspection of each party.
10. That the salary of Fenwick is to be $50 per week and at the end of the year he is to receive 80% of the profits.
11. That the partnership shall continue until either party gives ten days' notice of termination.
The relationship was terminated on January 1st, 1942, at the request of Mrs. Chesire who desired to cease work and remain at home with her child.
The Commission held that the agreement was nothing more than an agreement fixing the compensation of an employee. The Supreme Court held that the parties were partners. The court apparently gave great weight to the fact that the *Page 297 
parties had entered into the agreement, had called themselves partners, had designated the relationship one of partnership, and held that the surrounding circumstances, the conduct of the parties, c., were not such as to overcome the force and effect to be given the declaration of the agreement.
Most of the cases wherein the courts have undertaken to determine whether or not a partnership existed, or whether certain persons were members of existing partnerships have been those in which creditors have sought to impose liability upon alleged partners. In most cases, too, there have been no written partnership agreements to assist in fixing the status. However, the principles of law to be applied are the same. We think there can be no doubt of the right of the Commission, in the circumstances of this case, to raise the question and have a determination of the question of whether a partnership exists in law even though there is this agreement which is called a partnership agreement. We need not consider here what the effect of the agreement on the parties inter sese would be, but only its effect on the application of the Unemployment Compensation Law.
There are several elements that the courts have taken into consideration in determining the existence or non-existence of the partnership relation. The first element is that of the intention of the parties and here, of course, the agreement itself is evidential although not conclusive. Light on the intent of the parties is shed by the testimony of the respondent as follows:
"Q. When was she first hired by you?
"A. That is what I said, either 1937 or 1938, I can't say definitely what it was without looking it up: I couldn't give you the exact date. And she felt as though she was not getting enough money. Well, we were doing a lot of business, but the prices were very low at the time; it was in the depression and you had to bring your prices down to get business. And I told her I did not want to lose her because she was a very very good girl to me in that office, she was what I needed. I told her I couldn't see where I could afford to give her any more. And I did not want to lose her. So it went back and forth, back and forth. Finally I said, `I *Page 298 
will tell you what I will do: If we make any more money I will pay you more, if you want to go along on that agreement.' And that is where the partnership thing came in; that is how we started to be on the partnership concern at that time; that is when that was all discussed and arranged."
That statement is persuasive that the intention of the parties was to enter into an agreement that would provide a possibility of increase of compensation to Mrs. Chesire and at the same time protect Fenwick from being obliged to pay such increase unless business warranted it. The whole thing was prompted and instigated by the demand of the employee for an increase. The employer valued her services and did not wish to lose her. He wished to retain her in the exact same capacity as before but was afraid to promise a straight increase for fear it might mean loss to him. There is no suggestion that anything but the financial relation between the parties, with respect to compensation for services, was the thing they had in mind. After January 1st, 1939, the date the alleged partnership became effective, the operation of the business continued as before. Mrs. Chesire continued to serve in precisely the same capacity as before and Fenwick continued to have complete control of the management of the business. It would seem that, as far as the intention of the parties is concerned, the effect of the statements in the agreement has been met and overcome by the sworn testimony of Fenwick and by the conduct of the parties.
Another element of partnership is the right to share in profits and clearly that right existed in this case. However, not every agreement that gives the right to share in profits is, for all purposes, a partnership agreement. Wild v. Davenport,48 N.J.L. 129, 132; Cornell v. Redrow, 60 N.J. Eq. 251. Therefore, this point is not conclusive.
Another factor is the obligation to share in losses, and this is entirely absent in this case because the agreement provides that Mrs. Chesire is not to share in the losses.
Another is the ownership and control of the partnership property and business. Fenwick contributed all the capital and Mrs. Chesire had no right to share in capital upon dissolution. He likewise reserved to himself control. *Page 299 
The next is community of power in administration and the reservation in the agreement of the exclusive control of the management of the business in Fenwick excludes this element so far as Mrs. Chesire is concerned. In Wild v. Davenport,supra, Mr. Justice Depue, speaking for this court, said:
"In Voorhees v. Jones, the decision that a servant or agent who had a share of profits simply as compensation for services was neither a partner nor liable for partnership debts, was placed by Chief Justice Whelpley on the ground that such a person had no control over the operations of the firm, and could not direct its investments nor prevent the contracting of debts — in other words, had none of the prerogatives of a principal in the management and control of the business."
The law as stated in these opinions has been followed by our courts.
Another element is the language in the agreement, and although the parties call themselves partners and the business a partnership, the language used excludes Mrs. Chesire from most of the ordinary rights of a partner.
The conduct of the parties toward third persons is also an element to be considered and the conduct of the parties here does not support a finding that they were partners. They did file partnership income tax returns and held themselves out as partners to the Unemployment Compensation Commission, and Fenwick in his New York State income tax return reported that his income came from the partnership. But to no one else did they hold themselves out as partners. They did not inform the persons they purchased materials from, although Fenwick says this was not necessary since all purchases were for cash and they neither sought nor gave credit. The right to use the trade name had apparently come to Fenwick from one Florence Meola, by lease, and the partnership was given that name by Fenwick. There is no evidence that the trade name was ever registered as that of the partnership.
Another element is the rights of the parties on dissolution and apparently in this case the result of the dissolution, as far as Mrs. Chesire is concerned, was exactly the same as if she had quit an employment. She ceased to work and ceased *Page 300 
to receive compensation and everything reverted to the condition it was in prior to 1939, except that Fenwick carried on with a new receptionist.
Under all these circumstances, giving due effect to the written agreement and bearing in mind that the burden of establishing a partnership is upon the one who alleges it to exist, Cornell v.Redrow, supra, we think that the partnership has not been established, and that the agreement between these parties, in legal effect, was nothing more than one to provide a method of compensating the girl for the work she had been performing as an employee. She had no authority or control in operating the business, she was not subject to losses, she was not held out as a partner. She got nothing by the agreement but a new scale of wages.
The question as presented to this court is one of law and not one of fact. The facts are really not in dispute. The contest concerns the inferences of law to be drawn from the facts as found by the Supreme Court.
The Uniform Partnership Act defines a partnership as an association of "two or more persons to carry on as co-owners a business for profit." Essentially the element of co-ownership is lacking in this case. The agreement was one to share the profits resulting from a business owned by Fenwick. He contributed all the capital, managed the business and took over all the assets on dissolution. Ownership was conclusively shown to be in him.
The act further provides that sharing of profits is primafacie evidence of partnership but "no such inference shall be drawn if such profits were received in payment as * * * wages of an employee." R.S. 42:1-7, and it seems that is the legal inference to be drawn from the factual situation here.
The judgment is reversed.
For affirmance — THE CHIEF JUSTICE, CASE, BODINE, COLIE, OLIPHANT, JJ. 5.
For reversal — THE CHANCELLOR, DONGES, WELLS, RAFFERTY, DILL, FREUND, McGEEHAN, JJ. 7. *Page 301