NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1869
_____

MICHAEL EAGAN,

Appellant

v.

JAMES J. GORY

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-07-cv-00823)

Magistrate Judge: Honorable Joel Schneider
_____

Submitted Under Third Circuit LAR 34.1(a)
March 12, 2010

Before: AMBRO, SMITH and ALDISERT, Circuit Judges

(Opinion Filed: March 30, 2010)

_____

OPINION OF THE COURT
_____

ALDISERT, Circuit Judge.

1

In this diversity action, Plaintiff-Appellant Michael Eagan appeals the District Court's judgment for Defendant-Appellee James Gory on Eagan's claim for breach of an alleged partnership agreement under New Jersey law. Following a bench trial, the sole issue on appeal is whether the District Court for the District of New Jersey erred, either factually or legally, in concluding that no partnership existed between Eagan and Gory. For the reasons that follow, we will affirm.[1]

I.

Because the parties are familiar with the facts and proceedings in the District Court, we will recite them only as necessary to the discussion.

In or around May 2001, Eagan became engaged to marry Gory's daughter, Jennifer. The couple married in May 2002, but separated in August 2004 after Jennifer learned that Eagan was involved in an extramarital affair. They divorced in January 2005.

At all relevant times, Eagan was a real estate agent involved in the side business of purchasing, rehabilitating and selling homes for profit. Between May 25, 2001 and September 2003, when Jennifer and Eagan were engaged or married, Eagan and Gory worked together to purchase, rehabilitate and sell four properties. For each property, Eagan did most of the "legwork" by locating and investigating properties, attending sheriff's auctions, attending closings, and orchestrating the remodeling and rehabilitation

---

[1]The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), and we have jurisdiction pursuant to 28 U.S.C. § 1291. The parties agree that New Jersey law applies.

of the homes. Gory, in turn, funded the purchases, reimbursed Eagan for his out-of-pocket expenses, and gave Eagan fifty percent of the net profits. All purchases were transacted in Gory's name, and Gory retained absolute authority over decisions to purchase and sell properties.

After Eagan and Jennifer separated, Gory sold two additional residential properties – at Mullica Hill Road and New York Avenue – which had both been purchased with Eagan's help, prior to his separation from Jennifer. Gory did not give Eagan any of the profit from these sales. Gory also did not share profits from the sale of a residential property at Tremont Avenue, which was sold in January 2004, prior to Eagan's separation from Jennifer.[2] As with previous projects, Eagan alone had located and investigated the properties, and each was purchased by Gory and in Gory's name. The instant dispute arises from Gory's alleged failure to pay Eagan fifty percent of the profits from each of these three sales.

## II.

In December 2006, Eagan sued Gory in New Jersey state court, and in February 2007, Gory removed the case to the District Court for the District of New Jersey. In his complaint, Eagan sought to recover profits from the three disputed real estate sales[3] under

---

[2]That property was sold subject to a $70,200 mortgage, and at the time of the divorce, no profit was yet realized.

[3]These were the properties on Mullica Hill Road, Tremont Avenue and New York Avenue. Eagan sought half of the stipulated $462,457.03 in net profits.

the theory that he and Gory had entered an oral partnership agreement entitling Eagan to fifty percent of the profits from each sale. Gory filed a counterclaim for repayment of a $75,000 loan, a claim Eagan did not dispute. A bench trial was held before a United States magistrate judge, pursuant to 28 U.S.C. § 636(c), and the central issue was whether Eagan and Gory were partners under New Jersey law.

According to Eagan, sometime in May 2001, at or near the time he became engaged to Jennifer, Eagan and Gory entered "preliminary discussions" concerning a potential business arrangement. Eagan testified that he and Gory thereafter entered into an oral partnership agreement to purchase, improve and sell real property in New Jersey. According to Eagan, Gory agreed to pay the cost to purchase and fix the properties, and Eagan agreed to arrange their purchase, improvement and sale. Eagan additionally testified that the parties agreed to divide all profits equally, but he admitted that the parties never reduced their agreement to writing.

On the other hand, Gory admitted that he had an "agreement" with Eagan, but he urged that the two did not enter a partnership agreement. According to Gory, each property was purchased under a separate agreement that "[Eagan] would do the leg work to find the property and that [Gory] would finance it." Gory testified that, at his sole discretion, he gave Eagan half the profit from four properties because he believed (albeit mistakenly) that the money would benefit Jennifer. Consequently, Gory contended, any agreement between the parties ended in August 2004 when Jennifer and Eagan separated.

4

Based on the testimony of Eagan and Gory – the only witnesses at trial – the Court found that:

1.  "[D]efendant did not intend to enter into a partnership with plaintiff," but entered a business relationship with plaintiff because "plaintiff was not in a good financial position" and "[Gory] was a concerned father." Gory "intended to associate with plaintiff for only as long as plaintiff was married to Jennifer." (App. 10-11.)

2.  "[T]he obligation to share losses did not exist because plaintiff did not have the resources to pay any losses." (App. 12.)

3.  "The parties did not share mutual control over any significant property and they did not share power and administration . . . . Defendant, not plaintiff, had the sole right to make all significant decisions regarding the parties' dealings." (App. 13.)

4.  "[T]he parties never used the word partner [between themselves] . . . [and they] never represented themselves to third parties as partners." (App. 13-14.)

5.  "[T]he parties shared real estate profits on four occasions." (App. 14.)

6.  "Defendant's payments to plaintiff were a generous gesture to help his daughter. The money was not payment of a partnership share. . . . Defendant's payments to plaintiff were akin to a payment of wages, not the payment of a partnership share." (App. 15.)

Based on these findings, the Court concluded that no partnership existed between Eagan and Gory under New Jersey law. Although the Court suggested Eagan might have prevailed under a contract, wage-repayment, or quantum meruit theory, it noted that Eagan had not presented those theories at trial. Accordingly, the District Court entered judgment in Gory's favor on Eagan's claim for breach of partnership. It also entered judgment against Eagan on Gory's counterclaim for repayment of the $75,000 loan. This timely appeal followed.

5

## III.

The sole issue on appeal is whether the District Court erred, either factually or legally, in determining that Eagan and Gory were not partners under New Jersey law.[4] We exercise plenary review over the District Court's conclusions of law, and we review its factual findings for clear error. Gordon v. Lewistown Hosp., 423 F.3d 184, 201 (3d Cir. 2005). Under the clear error standard, we must accept the trial court's factual determinations unless they are either (1) "completely devoid of minimum evidentiary support displaying some hue of credibility," or (2) "bear[] no rational relationship to the supportive evidentiary data." Krasnov v. Dinan, 465 F.2d 1298, 1302 (3d Cir. 1972).

Under the New Jersey Uniform Partnership Act (1996), a partnership is "an association of two or more persons to carry on as co-owners a business for profit . . . ." N.J. Stat. Ann. § 42:1A-2. Under the Act, "[a] person who receives a share of the profits of a business is presumed to be a partner in the business," unless the profits are received in payment of specific obligations of the partnership. See id. § 42:1A-10(c)(3) (enumerating exceptions). In addition, other "elements to be considered include the intention of the parties, obligation to share in losses, ownership and control of partnership property and business, community of power and administration, language used in the partnership agreement, conduct of the parties toward third persons, and rights of the

---

[4]Eagan does not appeal from the District Court's entry of judgment against him on Gory's counterclaim for loan repayment.

parties upon dissolution." <u>Tuxedo Beach Club Corp. v. City Fed. Sav. Bank</u>, 749 F. Supp. 635, 646-647 (D.N.J. 1990) (<u>citing</u> <u>Fenwick v. Unemployment Comp. Comm'n</u>, 44 A.2d 172 (N.J. 1945)). As the party alleging its existence, Eagan bears the burden of establishing that a partnership exists. <u>Fenwick</u>, 44 A.2d at 175.

A.

At the outset, we consider Eagan's challenges to the District Court's factual findings. He first contends that the Court committed clear error in finding that Eagan would not have shared in the partnership's losses because he lacked the financial resources to pay any losses. This finding was not clear error. To the contrary, it was firmly grounded in evidence that Eagan was in financial distress,[5] that Gory was an established businessman, and that Gory was involved only to help his daughter (who would arguably be harmed if Eagan were forced to share losses). To the extent Eagan complains that "there was no evidence submitted on this question," only he is to blame. The obligation to share losses "is one of the most important indicia of a partnership," <u>Yonadi v. Comm'r</u>, 21 F.3d 1292, 1297 (3d Cir. 1994), and Eagan bore the burden of proving the partnership existed, <u>Fenwick</u>, 44 A.2d at 175. His failure to submit evidence on this issue did not prevent the District Court from making rational findings based on the evidence actually presented.

---

[5]Evidence of Eagan's financial distress included: (1) Eagan's admission that he had accepted a $75,000 loan from Gory, and (2) evidence that Jennifer had purchased a home from Eagan to save it from foreclosure.

Eagan additionally challenges the District Court's finding that the parties did not share ownership and control over the business. That finding also was not clearly erroneous. Although Eagan located the properties, negotiated their purchase, and was in charge of renovations, the weight of the evidence supported the District Court's conclusion that "[d]efendant, not plaintiff, had the sole right to make all significant decisions regarding the parties' dealings." (App. 13.) In his trial testimony, Eagan agreed that he "didn't have authority to do anything with regard to any real estate transactions . . . unless Mr. Gory authorized [him] to do it." (App. 99.) He additionally acknowledged that Gory retained absolute control over decisions to purchase or sell real estate. (App. 99.) Thus, the District Court's conclusion was not only grounded in the evidence, but it was supported by Eagan's own testimony. We conclude that the District Court's factual findings were without clear error.[6]

### B.

We next turn to the District Court's legal conclusion that Eagan and Gory were not partners under New Jersey law. As the District Court did, we consider evidence of profit-sharing, together with "the intention of the parties, the obligation to share in losses, ownership and control of partnership property and business, community of power and

---

[6]To the extent we can construe Eagan's brief to mount additional factual challenges, those challenges are rejected. We have examined all of the District Court's material factual findings, and we conclude that each was rationally supported by credible evidence at trial. See Krasnov, 465 F.2d at 1303. We will not disturb the District Court's factual findings.

8

administration, language used in the partnership agreement, conduct of the parties toward third persons, and rights of the parties upon dissolution." (App. 10 (citing Tuxedo Beach, 749 F. Supp. at 635).)

Based on the Court's findings of fact, we agree that Gory and Eagan were not partners. The Court concluded that: (1) Gory did not intend to enter into a partnership with Eagan (App. 10); (2) Eagan had no obligation to share losses (App. 10); (3) Gory had the sole right to make all significant decisions regarding the parties' dealings, and the parties did not share power over administration and decisionmaking (App. 13); (4) the parties never used the word "partner" or "partnership" among themselves (App. 13); and (5) the parties never referred to a partnership in their dealings with third parties (App. 14). Under New Jersey law, each of these factors weighs against Eagan's contention that he and Gory were partners, and none weighs in favor. See, e.g., Fenwick, 44 A.2d at 174-175.

Eagan's strongest argument is that he became a partner by virtue of the New Jersey Uniform Partnership Act's directive that "[a] person who receives a share of the profits of a business is presumed to be a partner in the business," unless the profits are received in payment of specific obligations of the partnership. See N.J. Stat. Ann. § 42:1A-10(c)(3). But this argument, too, is unavailing. As the District Court correctly noted, not every business arrangement involving profit-sharing is a partnership, as profit-

9

sharing is but one factor relevant to the existence *vel non* of a partnership.[7] See Farris v. Farris Eng'g Corp, 81 A.2d 731, 739 (N.J. 1951); Fenwick, 44 A.2d at 174; Bloom v. Clara Maass Med. Ctr., 685 A.2d 966, 974 (N.J. Super. Ct. App. Div. 1996). We agree with the District Court that the presumption in N.J. Stat. Ann. § 42:A-10(c)(3) was rebutted by evidence that Gory did not intend to enter a partnership, that the parties did not refer to themselves as "partners," and that Eagan had neither an obligation to share losses nor authority over major business decisions. Against overwhelming evidence to the contrary, the Partnership Act's profit-sharing presumption is simply insufficient to establish that Eagan and Gory were partners under New Jersey law. See Fenwick, 44 A.2d at 174-175 (determining that "co-ownership [was] lacking" where the parties agreed to be "partners" and share profits, but the business was owned, funded and managed exclusively by the defendant, who alone would bear all losses); Bloom, 685 A.2d at 974

_____

[7]Although neither party apparently noticed, the District Court analyzed the profit-sharing factor under former N.J. Stat. Ann. § 42:1-7 (West 2000) (repealed 2000), which made profit sharing "prima facie evidence of a partnership," instead of current law, under which "a person who receives a share of the profits of a business is presumed to be a partner in the business." N.J. Stat. Ann. § 42:1A-10 (West 2010). Although the Court should have applied the statute currently in force, the newer "presumption" is not a substantive change from the older "prima facie evidence" standard. See Uniform Partnership Act 1997 § 202 cmt. 3 (explaining that "no substantive change is intended" by "recast[ing]" profit-sharing as a "rebuttable presumption of partnership, a more contemporary construction, rather than as prima facie evidence thereof"). Consequently, the Court was correct to rely on cases predating the 2000 revision. Under these cases, the totality of factors, and not merely profit-sharing, enters into a decision as to whether a partnership exists. See, e.g., Fenwick, 44 A.2d at 174-175. Thus, although the District Court analyzed the issue under former law, it correctly held that profit-sharing is but one factor relevant to determining the existence of a partnership.

(notwithstanding a profit-sharing agreement and a consensus-driven process for reaching medical decisions, no partnership existed because the defendant doctor was in sole ownership and control of the corporation's management and affairs). Accordingly, we conclude that the District Court's legal analysis was without error.

******

We have considered all the contentions raised by the parties and conclude that no further discussion is necessary.

The judgment of the District Court will be affirmed.