HUGH C. JACKSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21207.   Promulgated November 6, 1952.

*Bayley Kohlmeier, Esq.*, and *George H. Koster, Esq.*, for the petitioner.

*T. M. Mather, Esq.*, for the respondent.

134

136

138

142

**OPINION.**

HARRON, *Judge:* The question to be decided is whether the petitioner's wife was a partner in the Ray Jackson and Sons partnership during the taxable years 1943 and 1944, owning a two-ninths interest in the partnership. The issue arises under sections 181, 182, 11, and 22 (a) of the Internal Revenue Code.

The respondent has determined that Ada Jackson was not a partner. The petitioner asserts that she was a partner.

The burden of proof is on the person asserting the existence of a partnership to prove it by competent evidence. *Swanson* v. *Siem*, 12 P. 2d 1053 (Calif.) ; and, generally, stricter proof is required of the existence of a partnership between members of the same family than is required of the existence of a partnership between strangers. *Cole* v. *Cole*, 286 N. W. 212 (Mich.) ; Uniform Partnership Act, sec. 7, notes 114, 120, pp. 42, 44, 45. Whether a person is a partner in a partnership is, on the whole, a matter of fact. *Townsend* v. *Appel Sons, Inc.*, 164 A. 679 (Md.). In general, "the facts and circumstances of the individual case must control," 40 Am. Jur. 146, sec. 32; and all related circumstances must be considered, *Eggelston* v. *Eggelston*, 47 S. E. 2d 243 (N. C.). Intent is a widely accepted test of whether a partnership exists. 40 Am. Jur. 156, sec. 43.

The question is whether, considering all of the facts, "the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."[3] *Commissioner* v. *Culbertson*, 337 U. S. 733.

The evidence in this proceeding establishes that a business was conducted by a partnership under the names of Jackson Brothers, and, later, Ray Jackson and Sons prior to 1943, and that the petitioner, Hugh, and his father, Ray, were partners in the partnership. There is testimony that written partnership agreements were executed during the period 1929 through 1942, which were drafted by petitioner's father. None of these written agreements were produced in evidence by the petitioner. There is testimony that Ada Jackson never was a party to any written partnership agreement executed prior to 1943. Corroborative of the testimony that, prior to 1943, there were several partnership agreements, in which Ada was not a partner, are the partnership income tax returns for the years 1939, 1940, 1941, and 1942, in which the number of partners, the individuals, and their respective interests were set forth. In each of the above years the number of partners and their respective interests changed, except that in 1941 and 1942 the interest of the petitioner, Hugh Jackson, was stated to be a four-ninths interest. The petitioner, Hugh, swore to the correctness of the partnership returns for the years 1939 through 1942. Ada Jackson was not a partner during the period 1939 through 1942, according to the petitioner's sworn statements set forth in the partnership returns for that period.

"In the typical contract of partnership the parties expressly agree to unite their property and services as coproprietors to carry on a business for a profit and to share the profits and losses in stated proportions." 40 Am. Jur. 145, sec. 32. In this proceeding, since there were written partnership agreements prior to 1943, and since the partnership returns reported the names of the partners, and their proportionate interests, it is difficult to understand how the petitioner can now assert that we should go outside such evidence, testimony about written partnership agreements, and the partnership returns for the years 1939–1942, to find out whether Ada Jackson was a partner prior to 1943.[4] But even if we do so, the conduct of the

---

[3] In the *Culbertson* case, the Supreme Court enumerated the following factors as ones to be considered in considering all the facts: (1) The agreement; (2) the conduct of the parties in executing the provisions of the agreement; (3) their statements; (4) the testimony of disinterested persons; (5) the relationship of the parties; (6) their respective abilities and capital contributions; (7) the actual control of income and the purposes for which it is used; and (8) any other factors throwing light on "their true intent."

[4] The petitioner admits that "There may be some doubt with regard to the exact legal classification of the interest of Ada Jackson during the interval" from 1939 until 1943, but since he bases his contention almost wholly on the claim that Ada Jackson contributed capital to the business of Ray Jackson and Sons in 1939, we must, therefore, start analysis of all of the circumstances, the intent, the conduct of the parties, the general evidence by considering what was actually done during the interval 1939–1942.

parties and the facts and circumstances existing, as far as we know, prior to 1943 do not support petitioner's contention that Ada Jackson was a partner prior to 1943. For example, during the period 1939–1942, neither the petitioner nor his father represented to their bank or to any other business contacts that Ada Jackson was a partner; and during this period she did not participate in the profits of the business in which Hugh and Ray Jackson were partners. Since the sharing of profits is evidence of a partnership when the participant is a principal in the business from which the profits are derived, and when the persons who manage the firm business and actually carry on the business do so as agents for the principal or principals, 18 L. R. A. (NS) 1013; 40 Am. Jur. 148, sec. 34; *Meehan* v. *Valentine*, 145 U. S. 611, and since Ada Jackson did not share in the profits of the business as a principal, during the period 1939 through 1942,[5] we do not find here, in the conduct of the parties and the surrounding circumstances, evidence which, apart from written agreements and partnership returns, establishes that Ada Jackson was a partner during the years 1939 through 1942.

There is evidence in this proceeding which contradicts any assertion that Ada Jackson was a partner in 1939 and thereafter, through 1942, namely the partnership income tax returns for those years. The statements therein naming the partners and their respective interests, which did not include Ada Jackson, were admissions against interest. *White* v. *Commissioner*, 172 F. 2d 629; cf. *Evan* v. *Quinn*, 26 B. T. A. 970. Also, when in 1943, the petitioner entered into a property settlement agreement with Ada Jackson, which is set forth in the Findings of Fact, he undertook to give her an undivided one-half of his four-ninths interest in the partnership named Ray Jackson and Sons. That agreement is evidence that during 1939, 1940, 1941, and 1943, Ada Jackson did not own any interest in the partnership, and that petitioner continued to own his four-ninths interest. Furthermore, when the petitioner opened a set of books for the Ray Jackson and Sons partnership in 1942, for the first time, no entry was made to show that Ada Jackson had contributed any capital to the partnership.

The petitioner asserts that his wife, Ada, actually contributed her personal property to the Ray Jackson and Sons partnership in 1939, a 1936 used car having a value of about $600, and he asserts, also, that circumstances existed at the time which established that the partnership was in financial distress, needing equipment but lacking cash or credit. The petitioner relies upon testimony of members of his family to corroborate these assertions, that of his wife and his father.

---

[5] The evidence is not clear that Ada Jackson received, as a partner, any of the earnings of the business during 1939–1942, unless the payment of living and household expenses is relied upon.

Even if we accept such testimony as establishing as fact that Ada Jackson had a used car and that it was traded in for a used truck which was used by the partnership, the entire record in this proceeding leaves us in great doubt about the contention that she intended to or actually did contribute her property, the car, to the partnership in payment for a partnership interest therein in 1939. Furthermore, the tenor of the evidence does not confirm petitioner's picture of dire financial distress in 1939. During 1939, the partnership purchased about $3,700 of farm equipment. It had wheat crops planted which were harvested in the autumn of 1939, and it was entitled to receive Department of Agriculture crop payments. The petitioner testified in this proceeding (Tr. pp. 23, 24, 25) that bank credit was available when crops were growing; that his father, Ray Jackson, made loans to the partnership; and that he signed notes for buying machinery and equipment, and then the partnership "would pay out on it." At least, there are conflicts between petitioner's testimony that in desperation he prevailed upon his wife, in 1939, to turn over her car in trade for a truck, having no other way of getting that item of equipment—the truck—and his testimony that his father endorsed notes for equipment which the partnership paid when it sold its crops, and the testimony that the partnership had crops which were harvested in the autumn of 1939, and that the partnership was able to buy about $3,700 of equipment in 1939. The actuality of the *alleged* circumstances is made doubtful by testimony from which an inference can be drawn that the partnership was not in such strained circumstances that it could not have purchased the used truck without Ada's aid in turning in her used car for the truck. We are not persuaded that the testimony about a transaction involving a trade-in of Ada's used car for a used truck in 1939, is entitled to substantial weight in determining whether in 1939 she made a capital contribution to the partnership *with the intent of becoming a partner*, and in payment for a partnership interest. See *Kingana Co.* v. *Beall*, 42 App. D. C. 487; *Beak* v. *Finkenbiner*, 12 App. D. C. 23; *Balestrieri & Co.* v. *Commissioner*, 177 F. 2d 867; *Rand* v. *Helvering*, 77 F. 2d 450; *Quock Ting* v. *United States*, 140 U. S. 417; *Carmack* v. *Commissioner*, 183 F. 2d 1; *William B. Cruise*, 12 T. C. 1059; *Ben R. Meyer*, 45 B. T. A. 228; *Evan* v. *Quinn, supra.* Testimony to the effect that in 1939, Ada made a capital contribution to the partnership for an interest therein is self-serving; and in view of the facts discussed above, i. e., the absence of any reference to her in agreements or partnership returns as a partner, the assertion that she intended, in 1939, to become a partner and to contribute capital for an interest in the partnership is doubtful, improbable, and unconvincing.

On all of the record, it has been found as a fact, therefore, that Ada Jackson did not make a contribution of any capital to Ray Jackson

and Sons partnership in 1939, and that in 1939 she did not intend to become a partner.

We come now to the events which occurred in 1943, namely the execution of the property settlement agreement by the petitioner and Ada, and the execution of another so called partnership agreement which recited that Ada Jackson owned an undivided two-ninths interest in the partnership of Ray Jackson and Sons. On brief, the petitioner argues, in part, as follows: "The agreements executed in 1943 were for the purpose of reducing the oral agreements to writing and specifically setting forth in writing the interests of the partners. The written agreement executed by petitioner and his wife in 1943 was of broader scope than their oral agreement of 1939 but it was based upon the original consideration and was so intended and understood by the parties. There may be some doubt with regard to the exact legal classification of the interest of Ada Jackson during the interval between the contribution of the car and the execution of the written agreement, but there can be no doubt the parties understood that Ada Jackson had an interest in the partnership and its earnings and accumulations during that period." In the above argument the petitioner refers to an oral agreement he made in 1939 that he would give Ada one-half of his interest in the partnership of Ray Jackson and Sons; and, as we understand it, "consideration" refers to the Ford car owned by Ada.

The petitioner in this proceeding relies, *inter alia*, upon *Weizer* v. *Commissioner*, 165 F. 2d 772; and *Felix Zukaitus*, 3 T. C. 814, but the facts here distinguish this proceeding from those cases. As we understand petitioner's entire contention and argument, he makes the assertion that Ada became a partner in 1939 by contributing capital to the partnership, her car, but that he delayed, and his father delayed, until 1943, giving formal recognition to her membership in the partnership, and then, in 1943, in recognition of her 1939 contribution, they formally recognized her as a partner in the so called written partnership agreement of January 1, 1943.[6] Also, the petitioner apparently contends that his property settlement agreement of January 2, 1943, and the so called partnership agreement of January 1, 1943, are not sufficient unto themselves, when read together, but that parol evidence

---

[6] The net earnings of Ray Jackson and Sons increased during 1941 and 1942 to amounts very much larger than earnings in 1940, which were, roughly, about $5,700. Earnings in 1941 and 1942, were, roughly, $31,000 and $67,000. The petitioner undertook a new venture in 1940, sheep raising, when, with a personal loan from Garden City Production Company, he purchased 1,378 lambs; and in 1941, he bought a band of 1,600 ewes for $12,000. The sheep raising venture was very profitable. In 1941 and 1942, the sheep were valued by petitioner, among assets of the partnership, at $30,000 and $39,518.01, respectively. In 1942, gross receipts were $136,545.88; gross profit was $67,555.48; net profit was $67,136.04. An unavoidable inference from such facts and circumstances is that by 1943, the partnership profits were in an amount which may have made the petitioner tax conscious.

should be considered relating to an oral agreement of petitioner in 1939.

We think that the property settlement agreement of January 2, 1943, is clear and unambiguous, and that it must be considered in this proceeding as sufficient according to its terms. It states the consideration given by Ada for one-half of petitioner's four-ninths interest in the Ray Jackson and Sons partnership, namely, that such interest is "in lieu of all her rights in and to the property of her husband by reason of the marriage relation." We cannot agree to petitioner's argument that we should go outside the terms of the property settlement agreement and find as a fact that a used, 1936 Ford car owned by Ada Jackson was the consideration received by petitioner from her one-half of his four-ninths interest in the partnership.[7] We reject this contention, and conclude that the agreement of January 2, 1943, must be considered in this proceeding as evidence of that which the agreement, by its clear and unambiguous terms, provides.

The last paragraph of the agreement, which we need not re-quote here, clearly provides that the two-ninths of petitioner's four-ninths interest in the partnership given to Ada, "shall be a property interest only," giving Ada only a two-ninths interest in the property of the partnership and a two-ninths interest in the profits, whenever such profits are distributed; and that the interest is in lieu of all rights under the marriage relation, including the right to support and maintenance, and the right of inheritance. We conclude that in entering into the property settlement agreement in 1943, Ada did not intend to become a partner, and that the property settlement agreement did not make Ada Jackson a partner in the Ray Jackson and Sons partnership. *Mitchel* v. *Bowers*, 15 F. 2d 287; *Burnet* v. *Leininger*, 285 U. S. 136; *Floyd D. Akers*, 6 T. C. 693; *Simmons* v. *Commissioner*, 164 F. 2d 220; *W. Stanley Barrett*, 13 T. C. 539, affd. 185 F. 2d 150.

Having rejected petitioner's contention that, in fact, Ada was a partner during the period 1939 through 1942, the foundation of his argument regarding the effect of the property settlement agreement and the so called partnership agreement, both executed in 1943, collapses. But apart from that, if petitioner were relying solely upon the 1943 agreements, and he relies upon them to a large extent, we must recognize certain tests, namely, that the mere fact that an agreement gives another person the right to share in the profits of a partnership does not create a partnership, or make the other person a partner. *Fenwick* v. *Unemployment Compensation Commission*, 44

---

[7] At this point, the petitioner's contention becomes confused. If part of the consideration moving from Ada, for the property settlement agreement, was the 1936 Ford car she turned in, in 1939, then it follows that she turned the car over to the petitioner rather than to the partnership as a capital contribution, so that in 1943 the property settlement agreement was executed for the reason, *inter alia*, that the petitioner wanted to repay his wife for giving her car to him.

A. 2d 172 (N. J.) ; and the sharing of partnership profits must be as a *principal, Meehan* v. *Valentine, supra.* Under the property settlement agreement, Ada was to share in the profits of the firm, when distributed, in lieu of support and maintenance. In the Uniform Partnership Act, section 7, it is stated that no inference is to be drawn from sharing in profits that the person so sharing is a partner, if payment of a share of profits is an annuity to a widow of a deceased husband, and we think that the principle applies here, where a sharing of profits by a wife is in lieu of support by a husband.

Moreover, the acceptance by another of part of the interest of a partner in a partnership does not establish, prima facie, that said person is a partner, for he may accept the interest without any intention of becoming a partner. *Parchen* v. *Anderson*, 5 P. 588 (Mont.). Again, all the facts and circumstances must be examined to determine the intent of the petitioner and Ada in executing the property settlement agreement in 1943. We have examined all of the evidence bearing upon such circumstances and intent, and the evidence shows as follows: That in connection with the 1943 agreements, no capital account was opened on the books of the partnership in Ada's name; and none existed in 1944 and 1945; that in 1943 and 1944, Ada did not have any control over a two-ninths share of the undistributed earnings of the partnership as a principal; that she did not receive two-ninths of the partnership earnings in 1943 and 1944; that the petitioner drew from partnership earnings in 1943 and 1944, $15,727.27, and $14,077.67, whereas checks of the partnership issued to Ada totalled in 1943 and 1944, only $2,525 and $7,059.02, respectively; and that petitioner and Ray Jackson exercised control in 1943 and 1944 over the earnings, and over the withdrawals and disbursements of partnership earnings.

Ada Jackson testified briefly in this proceeding. Her testimony is not that of a person who in good faith and with a business purpose intended to join with her husband and father-in-law in the present conduct of the business of Ray Jackson and Sons in 1939, 1943, or 1944. In line with her husband's contention in this proceeding, she says that she became a partner in the business in 1939, but throughout her testimony she demonstrated that she did not have any real understanding of what was involved in the conduct of the various business ventures carried on by the firm from 1939 through the taxable years; that she did not participate genuinely in the firm's business affairs; and that her husband, the petitioner, dominated and conducted the business and exercised complete control over its properties and earnings. With respect to the earnings of the business, her testimony shows that she did not regard any fixed percentage or part

as her own, but regarded the matter of sharing in the earnings as wholly within the discretion of her husband and father-in-law whose judgment she trusted as "fair." She did not question the provision in the property settlement agreement which she signed in January 1943, by which she gave up her right to receive support from her husband; she did not give thought to the differences between the terms of that agreement and the alleged oral agreement in 1939. She simply agreed, in 1943, to what her husband's attorney and her husband told her was desired by them, and she was told by her husband's attorney that the agreement of January 1943, meant that one-half of her husband's interest in the business was hers. She did not understand, nor was she told, as far as we know, that if she were to become an actual partner, she would be liable for part of the losses, if any, of the business. At least, in the absence of any testimony in the entire record about the obligation to share losses in some ways, we must deduce that she was not told about the liability of a real partner in a partnership business for a share of losses.

Ada Jackson testified that the 1943 agreement was the only one the attorney of the petitioner ever drafted for her signature, and that the agreement was discussed for the first time in 1941, also, that she never had her own bank account until sometime around 1942 (but she could not recollect definitely and clearly in what year her bank account was opened). She testified, with respect to payments of earnings of the business to her, that she had not received any distributions except for the payments of her 1943 and 1944 income taxes, and of distributions to her for household expenses, and that it was understood that she was to receive a monthly allowance for household expenses which she and her husband were to share as equally as possible. Her understanding was expressed in the following way: "We were all getting living expenses from it [Ray Jackson and Sons]." She did not know, however, the amounts of the taxes reported in her individual income tax returns for 1943 and 1944. She testified that she could not sign any checks drawn on Ray Jackson and Sons' bank account—only her husband and father-in-law could sign checks— and that after her bank account was opened (she was not sure about the year) her husband had her monthly allowances for household expenses deposited in her account; and that if she wanted any money, she must ask her husband. On this point she testified: "I have no right to draw on the account [bank account of the business]. If I want money my husband transfers it from the partnership to my account."

It has been held that ownership and control over profits while they remain undistributed constitutes one test of whether a person is a partner. *Sutton* v. *Schaff*, 104 Kan. 282; 178 P. 418. The evidence

in this proceeding shows that Ada Jackson never had, in 1943 and 1944, or prior thereto, any control over her alleged share of partnership earnings.

The agreement dated January 1, 1943, is entitled "Partnership Agreement," but it must be read with the property settlement agreement dated January 2, 1943. As proof of the contention of the petitioner that Ada Jackson was a partner in 1943 and 1944, it falls far short of supporting that contention. It is a self-serving document. It does not follow the form of a typical partnership agreement. It does not provide, for example, that the parties shall carry on a business as coproprietors, or that they will share the profits and losses in stated proportions. If the terms of a contract do not constitute a partnership, none will be declared, even though the parties, in words, call the arrangement one. *Guthrie* v. *Foster*, 76 S. W. (2d) 927 (Ky.).

Upon all of the evidence, it has been found as a fact that Ada Jackson, Ray and Hugh Jackson, in 1943 and 1944, did not intend to join together as partners in the conduct of the business known as Ray Jackson and Sons.

It has been found as a fact, also, that none of the capital of Ray Jackson and Sons at the beginning of 1943 represented outgrowth of any capital allegedly contributed in 1939 by Ada.[8] In 1943, the partnership had assets totalling $107,390, which included livestock and sheep valued at $36,390—an asset developed from bank borrowings and sheep raising; and other assets, none of which can be traced to, or have been shown to have grown out of the alleged contribution of Ada's car in trade for a truck in 1939.

In considering the evidence before us, we have not based our conclusions or ultimate findings of fact upon any single factor, but have considered all the circumstances and facts. *Commissioner* v. *Culbertson, supra*. As the trier of the facts, we have carefully considered all of the evidence to ascertain the intent with which the parties acted. We have, also, considered the conduct of the parties during the period throughout which Ada Jackson is said to have been, truly, a partner.

The respondent's determination is sustained.

*Decision will be entered for the respondent.*

---

[8] The petitioner attempts to bring this proceeding within the holdings of the *Weizer* and *Zukaitus, supra,* cases, and similar authorities. The petitioner and his father began the Ray Jackson and Sons business in 1929, ten years before the incident of a trade-in of Ada's used car for a truck. Ray Jackson was able to and did give the petitioner continuous financial assistance. Petitioner took up the sheep raising business on his own. It is impossible under the evidence in this proceeding to attribute with any reasonable degree of accuracy any of the capital of the partnership in 1943 to outgrowth from one item, a used truck, for which Ada's used car was given, in 1939, in part payment.