T.C. Memo. 1997-368


UNITED STATES TAX COURT


ERIC L. AND KAY K. JONES, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 26934-95.                    Filed August 11, 1997.



Eric L. Jones, for petitioners.

Clinton M. Fried, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, Judge:  Respondent determined a deficiency of $12,543 in petitioners' 1989 Federal income tax and an accuracy-related penalty pursuant to section 6662 in the amount of $475.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and

all Rule references are to the Tax Court Rules of Practice and Procedure.

After a concession,[1] the issues to be decided involve petitioners' entitlement to business bad debt deductions claimed by them for certain payments made by petitioner Eric L. Jones (petitioner) during the year in issue.

FINDINGS OF FACT

Some of the facts have been stipulated for trial pursuant to Rule 91. The parties' stipulations of fact are incorporated herein by reference and are found as facts in the instant case.

At the time they filed their petition in the instant case, petitioners resided in Dublin, Georgia. During the taxable year in issue, petitioner was an attorney licensed to practice law in the State of Georgia.

Petitioner invested in real estate in order to create the opportunity for his law firm to earn income by performing real estate syndications, title searches, and loan closings. During the taxable year in issue, however, petitioner was not involved in the business of lending money or in the business of selling corporations that he had created, funded, or promoted.

---

[1] In the opening brief, respondent conceded that "there are no additions to the tax applicable in this case" and made no argument as to the accuracy-related penalty pursuant to sec. 6662. Accordingly, we consider the penalty to have been conceded.

Petitioner was a 50-percent shareholder and secretary and treasurer of D.B. Metalworks, Inc. (Metalworks), a tree cutting and welding business. Petitioner purchased his 50 percent share in Metalworks for $1,000.

On July 13, 1988, Donald Brown, president of Metalworks, executed a note in the name of Metalworks (the first note), which was attested to by petitioner, in petitioner's capacity as "secretary-treasurer" of Metalworks. The first note provides that, in 90 days, Metalworks will pay $22,879.75, plus interest, to Farmers & Merchants Bank. Additionally, Mr. Brown and petitioner signed a "Guaranty of Payment" (guaranty) in which they agreed, inter alia, to be jointly and severally liable to pay the first note. The page on which the guaranty was printed also contains a transfer by Farmers & Merchants Bank, dated December 22, 1988, of all "rights, title and interest to the within note" to petitioner "WITHOUT recourse on us".

Additionally, petitioner individually signed a note (the second note), dated August 8, 1989, which provides that, in 59 days, petitioner will pay $22,879.75, plus interest, to Farmers & Merchants Bank. As security for the second bank note, petitioner granted Farmers & Merchants Bank a security interest in the first note. Below the language assigning the first note as collateral is the following language: "[Petitioner] WILL REDUCE THIS LOAN AS SOON AS D.B. METALWORKS COMES OUT FROM UNDER BANKRUPTCY. [Petitioner] HAS HIS HOUSE ON CAMELLIA DRIVE SOLD, WILL BE CLOSED

OUT IN THE NEXT FEW DAYS, WILL EITHER PAY OUT THIS LOAN OR GREATLY REDUCE."  Additionally, on the face of the second note was a handwritten notation, "Paid WMiller 10-23-89".

Attached to the second note was an assignment by petitioner, dated December 22, 1988, of all "rights, title and interest to the within* note to FARMERS AND MERCHANTS BANK, with recourse on me".  The text to the asterisk footnote is:  "Note from D. B. Metalworks, Inc. to Farmers and Merchants Bank dated July 13, 1988 and maturing October * * * [the day is blank], 1988, in the amount of $22,879.75 plus interest."

During either 1987 or 1988, Metalworks ceased business operations.  During October 1989, petitioner "paid the balance due on the note".

Schedule C of petitioners' Federal income tax return for taxable year 1989 listed "Finance services" as petitioner's principal business or profession and claimed bad debt deductions in the total amount of $38,100.  Petitioners deducted $28,080 for "payment on the note", $7,020 for loans that became uncollectible in 1989, and $3,000 for amounts paid to a restaurant referred to as Annabelle's for its capital stock.

Respondent determined that the foregoing payments were personal and were not made in connection with petitioner's trade or business and therefore disallowed the bad debt deductions claimed by petitioners in the amount of $38,100.  Respondent recharacterized such amount as short-term capital loss.

OPINION

The issue to be decided in the instant case is whether, pursuant to section 166(a)(1), petitioners are entitled to three bad debt deductions claimed by them.

Section 166(a)(1) generally provides that debts that become wholly worthless during a taxable year may be deducted in that year. Section 166, however, distinguishes between business bad debts and nonbusiness bad debts. Sec. 166(d); sec. 1.166-5(b), Income Tax Regs. Business bad debts may be deducted against ordinary income if they become wholly or partially worthless during the year (in the case of the latter, to the extent charged off during the taxable year as partially worthless debts). Sec. 1.166-3, Income Tax Regs. To qualify for a business bad debt deduction, the taxpayer must establish that the debt was proximately related to the conduct of the taxpayer's trade or business. United States v. Generes, 405 U.S. 93, 103 (1972); sec. 1.166-5(b), Income Tax Regs.

Nonbusiness bad debts, on the other hand, may be deducted, but only if they become entirely worthless during the year they are claimed; they are, moreover, to be treated as short-term capital losses. Sec. 166(d)(1)(B). Generally, a nonbusiness bad debt is a debt other than a debt (1) created or acquired in the trade or business of the taxpayer or (2) the loss from the worthlessness of which is incurred in a trade or business of the taxpayer. Sec. 166(d)(2). The question of whether a debt is a

nonbusiness bad debt is a question of fact.  Sec. 1.166-5(b), Income Tax Regs.

The bad debt deduction is limited to bona fide debt, that is, debts that arise from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money.  Sec. 1.166-1(c), Income Tax Regs. For purposes of section 166, a contribution to capital is not considered a debt.  United States v. Uneco, Inc. (In re Uneco, Inc.), 532 F.2d 1204, 1207 (8th Cir. 1976); Kean v. Commissioner, 91 T.C. 575, 594 (1988); sec. 1.166-1(c), Income Tax Regs.

A payment by a taxpayer in discharge of part or all of the taxpayer's agreement to act as a guarantor, endorser, or indemnitor of a debt obligation is to be treated as a worthless debt only if:  (1) The agreement was entered into in the course of the taxpayer's trade or business or a transaction for profit; (2) there was an enforceable legal duty upon the taxpayer to make the payment; and (3) the agreement was entered into before the obligation became worthless (or partially worthless in the case of an agreement entered into in the course of the taxpayer's trade or business).  Sec. 1.166-9(d), Income Tax Regs. Generally, if a taxpayer enters into an agreement to act as a guarantor in the course of trade or business, a payment by the taxpayer in discharge of part or all of the taxpayer's obligation as a guarantor is treated as a business bad debt at the time of payment to the extent that any right of subrogation held by the

taxpayer against the debtor is then worthless.  Sec. 1.166-9(a), (e)(2), Income Tax Regs.  If, however, a taxpayer enters into a transaction as a guarantor for profit, but not in the course of trade or business, a payment by the taxpayer in discharge of part or all of the taxpayer's obligation as a guarantor is treated as a worthless nonbusiness bad debt at the time of payment if any right of subrogation held by the taxpayer against the debtor is then worthless.  Sec. 1.166-9(b), (e)(2), Income Tax Regs.

A business bad debt deduction for a payment by the taxpayer in discharge of part or all of the taxpayer's obligation as a guarantor is only deductible if the taxpayer establishes: (1) The taxpayer was engaged in a trade or business at the time the guaranty was made, and (2) the guaranty was proximately related to the conduct of that trade or business.  Weber v. Commissioner, T.C. Memo. 1994-341; Smartt v. Commissioner, T.C. Memo. 1993-65; secs. 1.166-9(a), 1.166-5(b), Income Tax Regs. Whether the taxpayer is engaged in a trade or business is factual.  United States v. Generes, 405 U.S. 93, 104 (1972); sec. 1.166-5(b), Income Tax Regs.

Whether a guaranty is proximately related to the taxpayer's trade or business rests on the taxpayer's dominant motive, at the time of the guaranty, for becoming a guarantor.  United States v. Generes, supra at 104; Harsha v. United States, 590 F.2d 884, 886 (10th Cir. 1979).  The taxpayer's dominant motive must be business related, as opposed to investment related, for the

guaranty to be proximately related to the taxpayer's trade or business. Putoma Corp. v. Commissioner, 66 T.C. 652, 673 (1976), affd. 601 F.2d 734 (5th Cir. 1979); see United States v. Generes, supra.

A motive is business related when the taxpayer seeks to increase or protect the taxpayer's salary to be paid from the debtor corporation. Putoma Corp. v. Commissioner, supra at 674. A motive is investment related when the taxpayer aims to increase or protect the value of the taxpayer's stock in the debtor corporation. See United States v. Generes, supra; Weber v. Commissioner, supra. In deciding the taxpayer's motive for purposes of section 166, however, we examine the objective facts surrounding the loans rather than the taxpayer's subjective intent. Kelson v. United States, 503 F.2d 1291, 1293 (10th Cir. 1974) (citing United States v. Generes, supra).

Characterization of an advance as either a loan or capital contribution is a question of fact which must be answered by reference to all of the evidence, with the burden on the taxpayer to establish that the alleged loans were bona fide debt. Rule 142(a); Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980); Yale Ave. Corp. v. Commissioner, 58 T.C. 1062, 1073-1074 (1972). Objective factors are to be considered, and the taxpayer's subjective intent alone is not determinative of the issue of characterizing an advance as debt or equity. United States v. Uneco, Inc. (In re Uneco, Inc.), supra at 1209.

Deductions are a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to the deductions claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). Taxpayers are required to maintain records that are sufficient to enable the Commissioner to determine their correct tax liability. See sec. 6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs. Moreover, a taxpayer who claims a deduction bears the burden of substantiating the amount and purpose of the item claimed. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs.

In the instant case, petitioners contend that they are entitled to a bad debt deduction in the amount of $28,080 for a payment petitioner made as guarantor for loans made to D.B. Metalworks. Petitioners argue that the payment was a discharge of petitioner's obligation as a guarantor and is, therefore, deductible as a business bad debt pursuant to section 1.166-9(a), Income Tax Regs. Respondent contends that petitioners have not established that petitioner's guaranty was proximately related to his trade or business.

We conclude that petitioners have not carried their burden of proving that they are entitled to a bad debt deduction for the guaranty of D.B. Metalworks' indebtedness. As stated supra, in

deciding the taxpayer's motive for making a guaranty, we examine the objective facts surrounding the loans rather than the taxpayer's subjective intent. <u>Kelson v. United States</u>, <u>supra</u>. Petitioner testified that he made it a practice to participate in various businesses for the purpose of generating fees for his law practice. Additionally, petitioner testified that he anticipated negotiating contracts for D.B. Metalworks and that D.B. Metalworks did some work for Georgia Power, Oconee Electric Membership Corporation, and Okmulgee Electric Membership Corporation. He also testified that he sent Mr. Brown, president of D.B. Metalworks, only one bill for legal services, which was for incorporating D.B. Metalworks.

We conclude that petitioner's statements, standing alone, "do not bear the light of analysis." <u>United States v. Generes</u>, <u>supra</u> at 106. Although petitioner testified that he anticipated generating fees for his law firm by negotiating contracts for D.B. Metalworks, petitioner failed to present any details concerning fees generated from the work performed by that company for Georgia Power, Oconee Electric Membership Corporation, and Okmulgee Electric Membership Corporation. Indeed, petitioner testified that he sent Mr. Brown only one bill for legal services, which was for incorporating D.B. Metalworks. Additionally, petitioner's testimony concerning the other companies in which he allegedly participated in order to generate fees for his law practice is only superficial. The testimony

lacks the details of such alleged participation and the details surrounding the fees allegedly generated from such participation.

Petitioners simply have failed to establish that petitioner's dominant motivation in guaranteeing the D.B. Metalworks indebtedness was related to his trade or business as an attorney, as opposed to that of a mere investor.  Petitioners bear the burden of establishing their entitlement to the deduction, Rule 142(a), and have not met that burden.  Accordingly, we hold that petitioners are not entitled to their claimed bad debt deduction in the amount of $28,080.

As to the bad debt deduction claimed by petitioners for the worthlessness of advances in the amount of $7,020 allegedly made by petitioner to two or three individuals, petitioners failed to provide the notes or any other documentary evidence relating to such advances and sought to substantiate the advances solely through petitioner's testimony.[2]  We are not required to accept petitioner's self-serving and uncorroborated testimony, particularly where other and better evidence to prove the point in question should be available.  Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964); Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992); Tokarski v.

---

[2]     The record contains only two canceled checks drawn on petitioner's account that were both written to the same person, one in the amount of $500 and a second in the amount of $2,500, and a canceled check drawn on petitioner's account that was written to Morris State Bank in the amount of $202.50.

Commissioner, 87 T.C. 74, 77 (1986); see Jackson v. Commissioner, 19 T.C. 133, 145 (1952), affd. 207 F.2d 857 (10th Cir. 1953). Under the circumstances of the instant case, we are not required to, and we generally do not, rely on petitioner's testimony to sustain petitioners' burden of proving error in respondent's determinations. See Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Wood v. Commissioner, supra; Tokarski v. Commissioner, supra. Consequently, we conclude that petitioners have not established that the alleged advances in the amount of $7,020 to two or three individuals constitute bona fide debt that is deductible as a business bad debt.

As to the bad debt deduction claimed by petitioners for the alleged worthlessness of capital stock in Annabelle's restaurant, petitioners conceded that they paid $3,000 to Annabelle's "for its capital stock." Petitioners, however, argue that petitioner purchased the stock with the understanding that he would perform the restaurant's legal work. Petitioners provided two checks drawn on petitioner's account that were written to "Annabelle's", one in the amount of $150 and a second in the amount of $2,000.

A deduction for a bad debt is limited to a bona fide debt, that is, debts that arise from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. Sec. 1.166-1(c), Income Tax Regs. Petitioners did not argue, and have failed to establish, that the

purchase of capital stock in Annabelle's created a debtor-creditor relationship between petitioners and the restaurant. Consequently, we conclude that the payment of $3,000 to Annabelle's was not bona fide debt. Petitioners have not advanced or proven any other theory upon which a deduction could be premised. Accordingly, we hold that petitioners are not entitled to a bad debt deduction in the amount of $3,000.

As noted above, the penalty has been conceded. We have considered all of petitioners' remaining arguments and find them to be without merit.

To reflect the foregoing,

Decision will be entered
under Rule 155.