T.C. Memo. 1997-177


UNITED STATES TAX COURT


MACK L. MCCOY AND CATHERINE MCCOY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9638-95.                    Filed April 14, 1997.


Mack L. McCoy, pro se.

<u>Gregory J. Powers</u>, for respondent.


MEMORANDUM OPINION

NAMEROFF, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7443A(b)(3)[1] and Rules 180, 181, and 182.  Respondent determined a deficiency in petitioners' 1991 Federal income tax in the amount of $4,200 and an accuracy-related penalty under section 6662(a) in the amount of $840.

_____

[1]  All section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether petitioners are entitled to a section 162 deduction for accrued expenses of $15,000; and (2) whether petitioners are liable for the section 6662(a) accuracy-related penalty.

## Background

Some of the facts have been stipulated, and they are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time they filed their petition, petitioners resided in Thousand Oaks, California. References to petitioner are to Mack L. McCoy.

Petitioner is an architect by trade. In 1991, petitioner managed an interior design firm that built model homes for homebuilders. He worked 30 hours per week as a W-2 wage earner.

Petitioner also acted as a consultant to various individuals under his proprietorship named Mack McCoy. As Mack McCoy's proprietor, petitioner provided his clients with management services, such as marketing and overall management advice and internal work scheduling. Petitioner indicated that his consulting business had been on-going for about 20 years. In 1991, petitioner had one main client, a structural engineer, who paid petitioner $2,000 per month for about five months of services. The 1991 Schedule C for Mack McCoy reflects gross income of $10,913.64. Petitioner used the cash method of accounting to report Mack McCoy's income and expenses.

Petitioner allegedly formed another proprietorship in 1991 named The Real McCoy (Real McCoy). Petitioner's testimony surrounding the existence and operation of Real McCoy was sketchy. We surmise, however, that petitioner had a plan to build industrialized (i.e., prefabricated) housing, and Real McCoy was conceptualized to engage in the actual manufacture of the industrialized homes.

Petitioner took no formal steps to set up Real McCoy, and he stated it was formed just in his mind. Petitioner also indicated that he intended someday to create a formal structure, but that in 1991 it was just an idea. Real McCoy did not generate any revenue for petitioner and, ultimately, never manufactured anything. Since 1991, petitioner said he took no steps to establish Real McCoy as an on-going business because "the market totally went dead". Petitioner intended to use the accrual method of accounting to report Real McCoy's income and expenses.

Petitioner did not invest money into Real McCoy. He stated, however, that, while wearing his Mack McCoy hat, he drafted architectural plans (the plans) and "sold" them to Real McCoy for $15,000. Petitioner indicated that the plans were a useful tool to solicit potential investors because they allowed him to demonstrate his product on paper. Petitioner valued these plans at $15,000. Petitioner testified that he arrived at the above

figure using prevailing rates for similar types of architectural drawings

According to petitioner, as proprietor of both businesses, he took the following actions with respect to the plans: (1) Mack McCoy drew-up the architectural plans; (2) Real McCoy agreed to purchase the plans from Mack McCoy for $15,000; (3) Mack McCoy delivered the plans to Real McCoy; and (4) Mack McCoy issued a $15,000 bill to Real McCoy. Petitioner did not have any written documentation supporting the purported transaction. Real McCoy never paid Mack McCoy for the plans, and Mack McCoy did not institute legal action against Real McCoy for nonpayment. Petitioner stated that Real McCoy did not pay Mack McCoy because "the entity never got going" and that Mack McCoy did not sue Real McCoy because "there was nothing to gain."

On petitioners' 1991 Schedule C for Real McCoy, petitioner claimed a $15,000 deduction for the accrued cost of the plans. He did not, however, include $15,000 of income on the Schedule C for Mack McCoy. In the notice of deficiency, the Commissioner determined that petitioners were not entitled to the $15,000 deduction because they failed to establish that they incurred an ordinary and necessary business expense and because their method of accounting for this deduction did not clearly reflect income.

## Discussion

We begin our discussion by stating that respondent's determination is presumed correct, and petitioner bears the

burden of proving otherwise. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Moreover, petitioner must prove entitlement to any deduction claimed. <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).

The issue before us is whether petitioner is entitled to accrue $15,000 as a deduction for 1991. We hold that he is not because he failed to prove that he incurred that expense.

Section 162(a) permits the deduction of ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. The question of whether a taxpayer is engaged in the active conduct of a trade or business requires an examination of all relevant facts and circumstances. <u>Commissioner v. Groetzinger</u>, 480 U.S. 23, 36 (1987). To be deductible under section 162, expenses must relate to a trade or business functioning at the time the expenses are incurred. <u>Hardy v. Commissioner</u>, 93 T.C. 684, 687 (1989), affd. on this point in an unpublished order of the Court of Appeals for the Tenth Circuit filed October 29, 1990. Further, the expense must have been incurred after the taxpayer's trade or business actually commenced; expenses incurred prior to that time are nondeductible pre-opening expenses. <u>Jackson v. Commissioner</u>, 86 T.C. 492, 514 (1986), affd. 864 F.2d 1521 (10th Cir. 1989); <u>Goodwin v. Commissioner</u>, 75 T.C. 424, 433 (1980), affd. without published opinion 691 F.2d 490 (3d Cir. 1982); <u>McManus v.</u>

Commissioner, T.C. Memo. 1987-457, affd. without published opinion 865 F.2d 255 (4th Cir. 1988).

Real McCoy was not a functioning business in 1991. By petitioner's own admission, it was just an idea in his mind that never materialized. Petitioner took no formal actions to establish Real McCoy as a going concern, and he has yet to commence any sort of manufacturing activity. Moreover, Real McCoy did not generate any revenue for petitioner and, ultimately, never manufactured anything. In sum, even though petitioner intended to someday build industrialized housing, he failed to demonstrate that he actually carried on that activity during 1991.

Petitioner did not incur a binding and enforceable liability that would have entitled him to a deduction under section 162. Generally, an accrual method taxpayer deducts expenses in the year in which they are incurred, regardless of when they are actually paid. Heitzman v. Commissioner, 859 F.2d 783, 787 (9th Cir. 1988), affg. T.C. Memo. 1987-109. A liability is incurred for income tax purposes in the tax year in which: (1) All events have occurred that establish the fact of the liability; (2) the amount of the liability can be determined with reasonable accuracy; and (3) economic performance has occurred with respect to the liability. Sec. 1.461-1(a)(2), Income Tax Regs.; see also sec. 461(h). In order to be accruable, a liability must be

binding and enforceable; the liability must not be contingent on a future event; the amount of liability must be certain; and there must be a reasonable belief on the part of the debtor that the liability will be paid. Putoma Corp. v. Commissioner, 66 T.C. 652, 660 (1976), affd. 601 F.2d 734 (5th Cir. 1979); United Control Corp. v. Commissioner, 38 T.C. 957, 967 (1962). We need not dwell on this matter at length as petitioner failed to demonstrate that Real McCoy incurred a binding and enforceable liability.

During opening argument, respondent likened petitioners' situation to those disallowed by section 267, in support of the claim that Real McCoy's deduction should not be allowed until an equal amount of income is recognized by Mack McCoy. Generally, section 267 requires accrual basis taxpayers to defer deductions for amounts payable to a related person, as specified in section 267(b), until such time as the amount is includable in the recipient's gross income.

We need not make a determination as to whether petitioner's situation falls within the specified relationships found within section 267(b).[2] Section 1.267(a)-1(c), Income Tax Regs., reflects a general principle of tax law that no deduction is

---

[2] Sec. 267(b) does not explicitly make reference to transactions carried out by two proprietorships owned by a single taxpayer, although the underlying rationale of sec. 267 appears to be applicable.

allowed for an unpaid expense that arises from a transaction that is not bona fide.  We find that the Real McCoy's alleged liability did not arise from a bona fide arm's-length transaction.  Rather, as the record reveals, the liability arose from a dubious transaction carried out in petitioner's own mind and is not supported by economic reality.  Petitioner's attempt to use differing methods of reporting income in order to obtain this artificial deduction will not be permitted.

For the above reasons, we hold that petitioners are not entitled to deduct the $15,000 as an accrued business expense under section 162.  We, therefore, do not have to decide whether their method of accounting for that deduction clearly reflects income.

We next consider whether petitioners are liable for the section 6662(a) accuracy-related penalty asserted against them. We hold that they are.

Section 6662 imposes a penalty equal to a 20 percent portion of the underpayment attributable to, inter alia, negligence or disregard of rules or regulations.  "Negligence" includes failure to make a reasonable attempt to comply with the law, and the term "disregard" includes careless, reckless, or intentional disregard.  Sec. 6662(c).  The penalty does not apply to any portion of an underpayment for which there was reasonable cause and with respect to which the taxpayer acted in good faith.  Sec.

6664(c); sec. 1.6664-4(a), Income Tax Regs.  The Commissioner's determination imposing the accuracy-related penalty is presumed correct, and the taxpayers bear the burden of proving that they are not liable.  Rule 142(a); <u>Tweeddale v. Commissioner</u>, 92 T.C. 501, 505 (1989).

Petitioner's only contention raised as a defense to the accuracy-related penalty is his reliance on respondent's Publication 334, entitled "Tax Guide for Small Business".  Petitioner indicated that the following two paragraphs on page 11, of the 1993 tax year version, support his deduction and establish that his method of accounting for that deduction clearly reflects income:

> <u>Business and personal items</u>.  You may account for business and personal items under different accounting methods. Thus, you may figure the income from your business under an accrual method even though you use the cash method to figure personal items.

> <u>Two or more businesses</u>.  If you operate more than one business, you generally may use a different accounting method for each separate and distinct business if the method you use for each clearly shows your income.  For example, if you operate a personal service business and a manufacturing business, you may use the cash method for the personal service business but you must use the accrual method for the manufacturing business.  [Emphasis added.]

Petitioner's reliance on the above passages does not establish reasonable cause to support his position.  Petitioner misunderstands these paragraphs and incorrectly applied them to his factual situation.  For example, the second paragraph comports with code section 446(d) in stating, generally, that a

taxpayer with two separate and distinct businesses may use different methods of accounting to report income for each business. This provision does not have application to petitioners' situation, however, as Real McCoy is not a separate and distinct trade or business and the deduction claimed by Real McCoy did not arise from a bona fide transaction.

As illustrated, the above passages do nothing to assist petitioner in demonstrating reasonable cause. Since petitioner has not raised any other arguments in his defense, we find that he has failed to satisfy his burden. Accordingly, we hold petitioners liable for the accuracy-related penalty asserted against them.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.